_____
Honorable August B. Landis
United States Bankruptcy Judge

Entered on Docket
April 26, 2016

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: 15-10525-ABL |
| | ) |
| Wishing Well Property Investments, LLC, | ) Chapter 11 |
| Series 1, | ) |
| | ) Hearing Date:  April 7, 2016 |
| Debtor. | ) Hearing Time: 3:00 p.m. |
| _____ | ) |

### ORDER CONFIRMING CHAPTER 11 PLAN OF REORGANIZATION OF WISHING WELL PROPERTY INVESTMENTS, LLC, SERIES 1

Wishing Well Property Investments, LLC, Series 1 (the "**Debtor**"), as debtor and debtor

in possession, having proposed and filed its Third Amended Chapter 11 Plan of Reorganization

(the "**Plan**");[1] and the Court having conducted a hearing on April 7, 2016 (the "**Hearing**"), to

consider confirmation of the Plan; and the Court having considered (i) the Debtor's

_____

[1]  All capitalized terms used but not defined herein shall have the meanings ascribed to such
terms in the Plan.

1

Memorandum of Law in Support of Confirmation of its Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "**Memo**"), (ii) the testimony, declarations and exhibits admitted into evidence at the Hearing, (iii) the arguments of counsel presented at the Hearing, and (iv) the pleadings filed in support of confirmation; and the Court being familiar with the Plan and other relevant factors affecting this case pending under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"); and the Court having taken judicial notice of the entire record of the Chapter 11 case, including, without limitation, all pleadings and papers filed by the Debtor in the Chapter 11 case, including the order (the "**Disclosure Statement Order**") entered by the Court on September 24, 2015, (a) approving the Debtor' Disclosure Statement with Respect to the Plan (the "**Disclosure Statement**"), (b) approving the forms of ballots and solicitation and tabulation procedures, (c) prescribing the form and manner of notice thereof, (d) fixing the last date for filing objections to the Plan, (e) scheduling the Hearing to consider confirmation for the Chapter 11 Plan, and (f) appointing Schwartz Flansburg PLLC ("**SF**") as solicitation and tabulation agent; and the Court having found that due and proper notice has been given with respect to the Hearing, and the deadlines and procedures for objections to the Plan and the appearance of all interested parties having been duly noted in the record of the Hearing; and after due deliberation thereon, and sufficient cause appearing therefore:

/ / /

/ / /

/ / /

**IT IS HEREBY FOUND AND CONCLUDED,**[2] that

## JURISDICTION AND VENUE

A.      The Court has jurisdiction to conduct the Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334.

B.      Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.

C.      The Debtor is a proper debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

D.      Each of the conditions precedent to the entry of this Order has been satisfied.

## JUDICIAL NOTICE

E.      This Court takes judicial notice of the docket of the Debtor's Chapter 11 case maintained by the Clerk of the Court and/or its duly-appointed agent, and all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 case.

### STANDARDS FOR CONFIRMATION UNDER
### SECTION 1129 OF THE BANKRUPTCY CODE

F.      Section 1129(a)(1).  The Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122, 1123, 1125, and 1126 of the Bankruptcy code.

---

[2]   The Findings of Fact and Conclusions of Law contained herein constitute the findings of fact and conclusions of law required to be entered by this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  To the extent any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent any conclusion of law constitutes a finding of fact, it is adopted as such.

3

G.    <u>Section 1129(a)(3)</u>.  The Plan has been proposed in good faith and is not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances in this case.  The Plan is the result of extensive arms' length negotiations and achieves the goal of consensual reorganization embodied in the Bankruptcy Code.  Further, Plan's provisions have been negotiated in good faith, are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code, and are each necessary to the Debtor' successful reorganization.

H.    <u>Section 1129(a)(4)</u>.  No payment for services or costs in connection with the Chapter 11 case or the Plan has been made by the Debtor other than payments that have been authorized by order of the Court.

I.    <u>Section 1129(a)(7)</u>.  Each holder of an impaired Claim that has not accepted the Plan will, on account of such Claim, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

J.    <u>Section 1129(a)(8)</u>.  The Plan has not been accepted by all impaired classes of Claims.  Nevertheless, the Plan is confirmable because it satisfies 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting classes of Claims.

K.    <u>Section 1129(a)(9)</u>.  The Plan provides treatment for Administrative and Priority Claims ("**Administrative Claims**") that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

L.    <u>Section 1129(a)(10)</u>.  The Plan has been accepted by at least one class of impaired Claims that voted on the Plan determined without including any acceptance of the Plan by any insider.

4

M.    <u>Section 1129(a)(11).</u>  Confirmation of the Plan is not likely to be followed by the liquidation or the need for the further financial reorganization of the Debtor.

N.    <u>Section 1129(a)(12).</u>  The Plan provides for the payment of all fees payable under section 1930, title 28, United States Code by the Debtor on the Effective Date (or as soon as practicable thereafter).   After the Effective Date and until this Chapter 11 case is closed, converted, or dismissed, the Plan provides for the payment of all such fees as they become due and payable.

O.    <u>Section 1129(b).</u>  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to any dissenting or nonvoting impaired class.   Accordingly, the requirements of section 1129(b) of the Bankruptcy Code have been satisfied and the Court may "cram down" the Plan over any dissenting or nonvoting impaired class.

P.    <u>Section 1129(c).</u>  The Plan (including previous versions thereof) is the only plan that has been filed in the Chapter 11 case that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.   Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

Q.    <u>Section 1129(d).</u>   No party in interest, including but not limited to any governmental unit, has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.   Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## EXECUTORY CONTRACTS

R.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the assumption of each and every executory contract and unexpired lease that is listed in the Plan Schedules as being assumed, except for those executory contracts and unexpired leases that are expressly rejected by the Debtor.  The Debtor's decisions regarding the assumption and rejection of executory contracts and unexpired leases are based on and are within the sound business judgment of the Debtor, are necessary to the implementation of the Plan, and are in the best interests of the Debtor, its estate, holders of Claims, and other parties in interest in this Chapter 11 case.

S.     As required by Section 365(b) of the Bankruptcy Code, all cure obligations associated with any executory contract or unexpired lease that is to be assumed under the Plan shall be paid.

## SETTLEMENTS AND INJUNCTIONS

T.     Pursuant to sections 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and in consideration of the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all the Claims and controversies resolved pursuant to the Plan.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

**A.     General**

1.     The Plan, attached hereto as **Exhibit A**, is hereby confirmed and the record of the Hearing is hereby closed.

6

2.     The "Effective Date" of the Plan shall be that date which is the latter of fifteen (15) days after the date when the Court signs this Order confirming the Plan, and this Order is entered.

3.     In accordance with section 1141(a) of the Bankruptcy Code and upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of (i) the Reorganized Debtor and its respective successors and assigns, (ii) the holders of Claims and their respective successors and assigns (whether or not they voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed, or is deemed to have filed a proof of Claim), (iii) any other Person giving, acquiring, or receiving property under the Plan, (iv) any party to an executory contract or unexpired lease of the Debtor and (v) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any.

4.     On the Effective Date, except as otherwise provided in the Plan, title to all property of the Estates shall vest in and be transferred in accordance with the terms of the Plan.

**B.     Treatment of Claims**

5.     As set forth in Class 1 of the Plan, the secured claim of U.S. Bank, N.A., or any successor in interest, against the Debtor's real property located at 8820 Adobe Grande Street, Las Vegas, Nevada 89131 (the "**Adobe Grande Property**") shall be $239,000.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Adobe Grande Property, as a consequence of the original borrower's

bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Adobe Grande Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Adobe Grande Property).

6.    The Secured Claim of the Summerlin North Community Association against the Debtor's real property located at 9428 Amber Valley Lane, Las Vegas, Nevada 89134 shall be paid as set forth in Class 2(a) of the Plan.

7.    The Secured Claim of Ocwen Loan Servicing against the Debtor's real property located at 9428 Amber Valley Lane, Las Vegas, Nevada 89134 (the "**Amber Valley Property**") shall be paid as set forth in Class 2(b) of the Plan, and in accordance with the stipulation between the parties, Docket No. 232, and the Court's order approving the stipulation, Docket No. 240. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Amber Valley Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Amber Valley Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Amber Valley Property).

8.    The Secured Claim of Deutsche Bank against the Debtor's real property located at 3509 Benson Lane, Las Vegas, Nevada 89032 (the "**Benson Lane Property**") shall be paid as set forth in Class 3 of the Plan, and in accordance with the stipulation between the parties, Docket No. 283, and the Court's order approving the stipulation, Docket No. 287. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Benson Lane Property, as a

8

consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Benson Lane Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Benson Lane Property).

9.      The Secured Claim of Nationstar Mortgage against the Debtor's real property located at 721 Biltmore Avenue, Las Vegas, Nevada 89101 shall be paid as set forth in Class 4 of the Plan, and in accordance with the stipulation between the parties, Docket No. 234, and the Court's order approving the stipulation, Docket No. 242.

10.     The Secured Claim of Southern Highlands Community Association against the Debtor's real property located at 3067 Cantabria Court, Las Vegas, Nevada 89141 shall be paid as set forth in Class 5(a) of the Plan.

11.     The Secured Claim of Suntrust Mortgage against the Debtor's real property located at 3067 Cantabria Court, Las Vegas, Nevada 89141 shall be paid its indubitable equivalent in accordance with section 1129(b)(2)(A)(iii) by the Debtor's surrendering of the property to Suntrust Mortgage.

12.     The Secured Claim of Nationstar Mortgage against the Debtor's real property located at 2103 Capestone Street, Las Vegas, Nevada 89134 (the "**Capestone Property**") shall be paid as set forth in Class 6 of the Plan, and in accordance with the stipulation between the parties, Docket No. 268, and the Court's order approving the stipulation, Docket No. 278.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Capestone Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Capestone Property was

9

conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Capestone Property).

13.     As set forth in Class 7 of the Plan, the secured claim of Bank of New York Mellon, or any successor in interest, against the Debtor's real property located at 6413 Capricorn Drive, Las Vegas, Nevada 89108 (the "**Capricorn Property**") shall be $89,000.00, paid at an interest rate of 4.0% over 30 years. The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Capricorn Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Capricorn Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Capricorn Property).

14.     The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 7475 Desert Lupine Street, Las Vegas, Nevada 89139 shall be paid as set forth in Class 8 of the Plan, and in accordance with the stipulation between the parties, Docket No. 255, and the Court's order approving the stipulation, Docket No. 270.

15.     The Secured Claim of Wells Fargo Bank, N.A. against the Debtor's real property located at 9120 Entrancing Avenue, Las Vegas, Nevada 89149 (the "**Entrancing Property**") shall be paid as set forth in Class 9 of the Plan, and in accordance with the stipulation between the parties, Docket No. 284, and the Court's order approving the stipulation, Docket No. 288. The Debtor shall also be substituted into the place of the original borrower for the

10

mortgagee/mortgagor relationship with respect to the secured claim against the Entrancing Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Entrancing Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Entrancing Property).

16.    The Secured Claim of Nationstar Mortgage against the Debtor's real property located at 7973 Firethorn Lane, Las Vegas, Nevada 89123 (the "**Firethorn Property**") shall be paid as set forth in Class 10 of the Plan, and in accordance with the stipulation between the parties, Docket No. 233, and the Court's order approving the stipulation, Docket No. 241.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Firethorn Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Firethorn Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Firethorn Property).

17.    The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 6740 Fort Benton Road, Las Vegas, Nevada 89122 shall be paid as set forth in Class 11 of the Plan, and in accordance with the stipulation between the parties, Docket No. 259, and the Court's order approving the stipulation, Docket No. 273.

18.    The Secured Claim of Bank of America against the Debtor's real property located at 7703 Gatsby House Street, Las Vegas, Nevada 89166 (the "**Gatsby House Property**") shall be paid as set forth in Class 12 of the Plan, and in accordance with the stipulation between the parties, Docket No. 236, and the Court's order approving the stipulation, Docket No. 244.  The

Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Gatsby House Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Gatsby House Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Gatsby House Property).

19.    As set forth in Class 13 of the Plan, the secured claim of Bayview Servicing, or any successor in interest, against the Debtor's real property located at 6645 Hathersage Avenue, Las Vegas, Nevada 89139 (the "**Hathersage Property**") shall be $145,000.00, paid at an interest rate of 5.25% over 30 years.  The Debtor shall also pay post-petition tax advances in the total amount of $1,727.80, over a period of twelve (12) months, or $143.99 per month over the first twelve (12) months following the Effective Date of the Plan.  The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Hathersage Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Hathersage Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Hathersage Property).

20.    The Secured Claim of Nationstar Mortgage against the Debtor's real property located at 6418 Hayden Peak Lane, Las Vegas, Nevada 89139 (the "**Hayden Peak Property**") shall be paid as set forth in Class 14 of the Plan, and in accordance with the stipulation between

the parties, Docket No. 267, and the Court's order approving the stipulation, Docket No. 277. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Hayden Peak Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Hayden Peak Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Hayden Peak Property).

21.    As set forth in Class 15 of the Plan, the secured claim of Bank of America, or any successor in interest, against the Debtor's real property located at 5120 Jewel Canyon Drive, Las Vegas, Nevada 89122 (the "**Jewel Canyon Property**") shall be $94,162.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Jewel Canyon Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Jewel Canyon Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Jewel Canyon Property).

22.    As set forth in Class 16 of the Plan, the secured claim of Bank of New York Mellon, or any successor in interest, against the Debtor's real property located at 1110 Jewel Springs Lane, North Las Vegas, Nevada 89081 (the "**Jewel Springs Property**") shall be $213,000.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed

and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Jewel Springs Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Jewel Springs Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Jewel Springs Property).

23.    The Secured Claim of Villa Del Oro Owners Association against the Debtor's real property located at 3154 Juanita Drive, Las Vegas, Nevada 89102 shall be paid as set forth in Class 17(a) of the Plan.

24.    As set forth in Class 17(b) of the Plan, the secured claim of Bank of New York Mellon, or any successor in interest, against the Debtor's real property located at 3154 Juanita Drive, Las Vegas, Nevada 89102 (the "**Juanita Property**") shall be $59,000.00, paid at an interest rate of 4.0% over 30 years. The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Juanita Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Juanita Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Juanita Property).

25.     The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 6187 Meadow View Lane, Las Vegas, Nevada 89103 shall be paid as set forth in Class 18 of the Plan, and in accordance with the stipulation between the parties, Docket No. 264, and the Court's order approving the stipulation, Docket No. 275.

26.     The Secured Claim of Century Meadows Homeowners Association against the Debtor's real property located at 6138 Meadow View Lane, Las Vegas, Nevada 89103 shall be paid as set forth in Class 19(a) of the Plan.

27.     The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 6138 Meadow View Lane, Las Vegas, Nevada 89103 shall be paid as set forth in Class 19(b) of the Plan, and in accordance with the stipulation between the parties, Docket No. 257, and the Court's order approving the stipulation, Docket No. 271.

28.     The Secured Claim of Silverado Court Landscape Maintenance Corporation against the Debtor's real property located at 10672 Medicine Bow Street, Las Vegas, Nevada 89183 shall be paid as set forth in Class 20(a) of the Plan.

29.     The Secured Claim of Bayview Servicing against the Debtor's real property located at 10672 Medicine Bow Street, Las Vegas, Nevada 89183 (the "**Medicine Bow Property**") shall be paid as set forth in Class 20(b) of the Plan, and in accordance with the stipulation between the parties, Docket No. 266, and the Court's order approving the stipulation, Docket No. 276.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Medicine Bow Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Medicine Bow

Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Medicine Bow Property).

30.      The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 7722 Montefrio Avenue, Las Vegas, Nevada 89113 shall be paid as set forth in Class 21 of the Plan, and in accordance with the stipulation between the parties, Docket No. 263, and the Court's order approving the stipulation, Docket No. 274.

31.      The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 58 Moonrise Way, Henderson, Nevada 89074 shall be paid as set forth in Class 22 of the Plan, and in accordance with the stipulation between the parties, Docket No. 258, and the Court's order approving the stipulation, Docket No. 272.

32.      The Secured Claim of Mountain's Edge Master Association against the Debtor's real property located at 6982 Positano Hill Avenue, Las Vegas, Nevada 89178 shall be paid as set forth in Class 23(a) of the Plan.

33.      The Secured Claim of Caliber Home Loans against the Debtor's real property located at 6982 Positano Hill Avenue, Las Vegas, Nevada 89178 (the "**Positano Hill Property**") shall be paid as set forth in Class 23(b) of the Plan, and in accordance with the stipulation between the parties, Docket No. 248, and the Court's order approving the stipulation, Docket No. 251.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Positano Hill Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Positano Hill Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Positano Hill Property).

16

34.    The Secured Claim of Lynbrook Master Association against the Debtor's real property located at 4836 Pounding Surf Avenue, Las Vegas, Nevada 89131 shall be paid as set forth in Class 24(a) of the Plan.

35.    The Secured Claim of Ditech Financial, LLC against the Debtor's real property located at 4836 Pounding Surf Avenue, Las Vegas, Nevada 89131 shall be paid as set forth in Class 24(b) of the Plan, and in accordance with the stipulation between the parties, Docket No. 254, and the Court's order approving the stipulation, Docket No. 269.

36.    As set forth in Class 25 of the Plan, the secured claim of Bank of America, or any successor in interest, against the Debtor's real property located at 9076 Sage Thicket Avenue, Las Vegas, Nevada 89178 (the "**Sage Thicket Property**") shall be $265,000.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Sage Thicket Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Sage Thicket Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Sage Thicket Property).

37.    As set forth in Class 26 of the Plan, the secured claim of Bank of America, or any successor in interest, against the Debtor's real property located at 9064 Salvatore Street, Las Vegas, Nevada 89148 (the "**Salvatore Property**") shall be $170,000.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed and the Debtor shall be responsible

17

for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Salvatore Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Salvatore Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Salvatore Property).

38.    The Secured Claim of Ocwen Loan Servicing against the Debtor's real property located at 10155 Sequoia Canyon Place, Las Vegas, Nevada 89148 (the "**Sequoia Canyon Property**") shall be paid as set forth in Class 27 of the Plan, and in accordance with the stipulation between the parties, Docket No. 231, and the Court's order approving the stipulation, Docket No. 239.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Sequoia Canyon Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Sequoia Canyon Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Sequoia Canyon Property).

39.    As set forth in Class 28 of the Plan, the secured claim of Bank of New York Mellon, or any successor in interest, against the Debtor's real property located at 2759 Serenidad Drive, Las Vegas, Nevada 89123 (the "**Serenidad Property**") shall be $130,000.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate

18

taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Serenidad Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Serenidad Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Serenidad Property).

40.    The Secured Claim of Villas at Huntington HOA against the Debtor's real property located at 699 Shadwell Street, Las Vegas, Nevada 89178 shall be paid as set forth in Class 29(a) of the Plan.

41.    As set forth in Class 29(b) of the Plan, the secured claim of Bank of New York Mellon, or any successor in interest, against the Debtor's real property located at 699 Shadwell Street, Las Vegas, Nevada 89178 (the "**Shadwell Property**") shall be $169,000.00, paid at an interest rate of 4.0% over 30 years.  The loan shall also be de-escrowed and the Debtor shall be responsible for paying all necessary taxes and insurance payments directly to the appropriate taxing authority and insurance carrier, respectively.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Shadwell Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Shadwell Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Shadwell Property).

42.     The Secured Claim of Nationstar Mortgage, LLC against the Debtor's real property located at 8531 Shelly Road, Las Vegas, Nevada 89123 (the "**Shelly Road Property**") shall be paid as set forth in Class 30 of the Plan, and in accordance with the stipulation between the parties, Docket No. 235, and the Court's order approving the stipulation, Docket No. 243. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Shelly Road Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Shelly Road Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Shelly Road Property).

43.     The Secured Claim of Nationstar Mortgage, LLC against the Debtor's real property located at 7593 Slipstream Street, Las Vegas, Nevada 89139 (the "**Slipstream Property**") shall be paid as set forth in Class 31 of the Plan, and in accordance with the stipulation between the parties, Docket No. 253, and the Court's order approving the stipulation, Docket No. 262.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Slipstream Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Slipstream Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Slipstream Property).

44.     The Secured Claim of Roundpoint Mortgage Servicing against the Debtor's real property located at 850 N. Sloan Lane, F104, Las Vegas, Nevada 89110 shall be paid as set forth

in Class 32 of the Plan, and in accordance with the stipulation between the parties, Docket No. 245, and the Court's order approving the stipulation, Docket No. 246.

45.     The Secured Claim of The Yandell Living Trust against the Debtor's real property located at 7556 Spanish Bay Drive, Las Vegas, Nevada 89113 shall be paid as set forth in Class 33 of the Plan.

46.     The Secured Claim of Bank of America against the Debtor's real property located at 144 Spinnaker Drive, Henderson, Nevada 89015 (the "**Spinnaker Property**") shall be paid as set forth in Class 34 of the Plan, and in accordance with the stipulation between the parties, Docket No. 249, and the Court's order approving the stipulation, Docket No. 252. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Spinnaker Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Spinnaker Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Spinnaker Property).

47.     The Secured Claim of Nationstar Mortgage, LLC against the Debtor's real property located at 421 Violetta Avenue, North Las Vegas, Nevada 89031 (the "**Violetta Property**") shall be paid as set forth in Class 35 of the Plan, and in accordance with the stipulation between the parties, Docket No. 233, and the Court's order approving the stipulation, Docket No. 241. The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Violetta Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Violetta Property was

21

conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Violetta Property).

48.    The Secured Claim of Iron Mountain Ranch Landscape Maintenance Association against the Debtor's real property located at 4904 Whistling Acres Avenue, Las Vegas, Nevada 89131 shall be paid as set forth in Class 36(a) of the Plan.

49.    The Secured Claim of Wells Fargo Bank against the Debtor's real property located at 4904 Whistling Acres Avenue, Las Vegas, Nevada 89131(the "**Whistling Acres Property**") shall be paid as set forth in Class 36(b) of the Plan, and in accordance with the stipulation between the parties, Docket No. 286, and the Court's order approving the stipulation, Docket No. 290.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Whistling Acres Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Whistling Acres Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Whistling Acres Property).

50.    The Secured Claim of Nationstar Mortgage, LLC against the Debtor's real property located at 4831 White Jade Street, North Las Vegas, Nevada 89081 (the "**White Jade Property**") shall be paid as set forth in Class 37 of the Plan, and in accordance with the stipulation between the parties, Docket No. 233, and the Court's order approving the stipulation, Docket No. 241.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the White Jade Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the White Jade Property was

22

conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the White Jade Property).

51.     The Secured Claim of Bank of America against the Debtor's real property located at 611 Zalataia Way, Las Vegas, Nevada 89031 (the "**Zalataia Property**") shall be paid as set forth in Class 38 of the Plan, and in accordance with the stipulation between the parties, Docket No. 180, and the Court's order approving the stipulation, Docket No. 181.  The Debtor shall also be substituted into the place of the original borrower for the mortgagee/mortgagor relationship with respect to the secured claim against the Zalataia Property, as a consequence of the original borrower's bankruptcy filing, in which the original borrower was discharged of the subject mortgage debt and title to the Zalataia Property was conveyed to the Debtor (as such, the original borrower has no personal liability on the subject mortgage debt and no legal or equitable interest in the Zalataia Property).

52.     All other secured claims and their related liens against the Debtors' properties shall be stripped, including but not limited to, unsecured portions of mortgages, junior mortgages, non-superpriority portions of HOA liens, utility liens and all other liens against the Debtor's properties.

53.     All creditors' secured rights and/or lien-holder rights with respect to the Debtor's properties are hereby modified as set forth above.

54.     As set forth in Class 39 of the Plan, the Allowed General Unsecured Claims shall be paid their pro rata distribution of the Equity Contribution of $80,000.00, after payment of all allowed administrative claims, priority claims and HOA claims in Classes 1 through 38.

## C.    Plan Implementation.

55.    The Debtor is authorized to undertake or cause to be undertaken any and all acts and actions contemplated by the Plan or required to consummate and implement the provisions of the Plan, prior to, on, and after the Effective Date, including without limitation, entering, executing, delivering, filing or recording any agreements, instruments, or documents necessary to implement the Plan.  All such actions shall be deemed to have occurred and shall be in effect without any requirement or further action by the Debtor.

56.    Each federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order.

57.    Any and all transfers of Property authorized hereby or the recording of any deed or other instrument in accordance with the terms of this Order, the Plan or any Sale Order shall be free and clear of any and all stamp, real property transfer or similar taxes imposed upon the making or delivery of any instrument of transfer pursuant to Section 1146 of the Bankruptcy Code.

58.    All settlements, compromises, releases, discharges, exculpations and injunctions set forth in the Plan, shall be, and hereby are, effective and binding on all persons who may have had standing to assert such settled, released, discharged, exculpated or enjoined causes of action and no other person or entity shall possess such standing to assert such causes of action after the Effective Date.

24

**D.    Plan Distributions.**

59.    On and after the Effective Date, distributions on account of allowed Claims, if any, shall be effectuated pursuant the Plan.

60.    In accordance with the Plan, all applications for payment of fees and reimbursement of expenses by professionals retained in these Chapter 11 Cases, as well as parties seeking compensation pursuant to section 503 of the Bankruptcy Code must be filed with the Court by the date that is no later than forty-five (45) days after the Effective Date (or, if such date is not a Business Day, by the next Business Day thereafter).  Any Person or entity that fails to file such an application or request on or before such date shall be forever barred from asserting such Administrative Claim against the Debtor or their properties, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.  Applications for approval of professionals' fees not previously awarded during the pendency of the Chapter 11 case may be included in such professional's final applications as set forth herein and in the Plan.  Objections, if any, to Fee Claims shall be filed and served not later than seven (7) business days prior to the date set by the Court for the hearing to consider such requests.

**E.    Executory Contracts and Leases.**

61.    As of the Confirmation Date, all executory contracts and unexpired leases of the Debtor shall be assumed, pursuant to sections 365 and 1123 of the Bankruptcy Code, as identified and set forth in the Plan.

**F.    Taxes and Transfers.**

62.    The transfer of any asset under the Plan or this Order has been duly authorized, and when issued as provided in the Plan, will be validly issued, fully paid, and non-assessable.

25

63.     All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and recorded notwithstanding any contrary provision of applicable non-bankruptcy law.  This Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

**G.     Miscellaneous.**

64.     From and after the Confirmation Date, this Court shall retain and have exclusive jurisdiction of all matters arising out of this Chapter 11 case pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code, including without limitation, jurisdiction over the matters set forth in the Plan, which is incorporated herein by reference, as if set forth herein.

65.     Except as otherwise provided in the Plan and this Order, notice of all subsequent pleadings in this Chapter 11 case shall be limited to counsel for the Debtor, the United States Trustee, and any party known to be directly affected by the relief sought.

66.     Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

67.     All entities holding Claims against the Debtor that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

26

68.     In accordance with section 1142 of the Bankruptcy Code, the Debtor, and any other entity designated pursuant to the Plan are hereby authorized, empowered and directed to issue, execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan and as set forth in the Plan.

69.     Any document related to the Plan that refers to a plan of reorganization of the Debtor other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a plan of reorganization of the Debtor in such document shall mean the Plan confirmed by this Order, as appropriate.

70.     In the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document).  In the event of any inconsistency between the Plan or any agreement, instrument, or document intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of the Plan shall govern.

71.     The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

72.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

73.     If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court, or any other Court, such reversal, modification or

vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

74.    The Plan shall be substantially consummated on the Confirmation Date, because the transactions described in the Plan shall have occurred or shall have been provided for.

Submitted by:

SCHWARTZ FLANSBURG PLLC

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
Bryan A. Lindsey, Esq., NBN 10662
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, NV 89119
Attorneys for the Debtor

**SUBMISSION TO COUNSEL FOR APPROVAL PURSUANT TO LR 9021**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____ The court has waived the requirement set forth in LR 9021(b)(1).

_____ No party appeared at the hearing or filed an objection to the motion.

__X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

_____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this Order.

APPROVED:                    Cincy Stock, Esq.; Christopher Connell, Esq.

DISAPPROVED:

FAILED TO RESPOND:

Submitted by:

SCHWARTZ FLANSBURG PLLC

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq., NBN 10985
Bryan A. Lindsey, Esq., NBN 10662
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, NV 89119
Attorneys for the Debtor

# # #

# EXHIBIT A

Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

### UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) CASE NO.: 15-10525-ABL |
| | ) |
| Wishing Well Property Investments, LLC, Series 1, | ) Chapter 11 |
| | ) |
| Debtor. | ) Hearing Date:  April 7, 2016 |
| | ) Hearing Time:  3:00 p.m. |
| | ) |
| _____ | ) |

## THIRD AMENDED PLAN OF REORGANIZATION FOR
## WISHING WELL PROPERTY INVESTMENTS, LLC, SERIES 1
## UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND
DEFINED TERMS ................................................................................................................. 1
    A.     Rules of Interpretation, Computation of Time and Governing Law ................................. 1
    B.     Defined Terms .................................................................................................................. 2

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS .......................................... 7
    A.     Administrative Claims ..................................................................................................... 7
    Priority Tax Claims ................................................................................................................... 8

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
INTERESTS ............................................................................................................................ 8
    A.     Summary .......................................................................................................................... 8
    B.     Classification and Treatment of Claims and Equity Interests ....................................... 10
    C.     Discharge of Claims ...................................................................................................... 24

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................ 24
    A.     Presumed Acceptance of Plan ....................................................................................... 24
    B.     Voting Classes ............................................................................................................... 24
    C.     Acceptance by Impaired Classes of Claims .................................................................. 24
    D.     Cramdown ...................................................................................................................... 25
    E.     Elimination of Vacant Classes ...................................................................................... 25

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................... 25
    7.     Release of Liens, Claims and Equity Interests .............................................................. 27
    8.     Certificate of Incorporation and Bylaws ....................................................................... 27
    9.     Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes ............ 27

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 28
    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases ................... 28
    B.     Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ...................... 29
    C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .................. 29
    D.     Contracts and Leases Entered Into After the Commencement Date ............................... 30

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 30
    A.     Distributions for Claims Allowed as of the Effective Date ........................................... 30
    B.     Distributions on Account of Claims Allowed After the Effective Date .......................... 30
    C.     Delivery and Distributions and Undeliverable or Unclaimed Distributions .................. 31
    D.     Compliance with Tax Requirements/Allocations ........................................................... 32
    E.     Timing and Calculation of Amounts to Be Distributed ................................................. 33
    F.     Setoffs ........................................................................................................................... 33

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ............................................................................................................ 33
    A.     Resolution of Disputed Claims ...................................................................................... 33
    B.     Disallowance of Claims ................................................................................................. 34
    C.     Amendments to Claims .................................................................................................. 35

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ................................................................................................................................... 35
    A.     Conditions Precedent to Confirmation .......................................................................... 35
    B.     Conditions Precedent to Consummation ........................................................................ 35
    C.     Waiver of Conditions .................................................................................................... 35
    D.     Effect of Non Occurrence of Conditions to Consummation .......................................... 35

ARTICLE X. SETTLEMENT, RELEASE AND RELATED PROVISIONS ...........................................36
    A.      Compromise and Settlement ............................................................................36
    B.      Preservation of Rights of Action ...................................................................36

ARTICLE XI. BINDING NATURE OF PLAN .......................................................................................37

ARTICLE XII. RETENTION OF JURISDICTION .................................................................................37

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..............................................................................38
    A.      Payment of Statutory Fees ..............................................................................38
    B.      Modification of Plan .......................................................................................38
    C.      Revocation of Plan ..........................................................................................38
    D.      Successors and Assigns...................................................................................38
    E.      Reservation of Rights ......................................................................................39
    F.      Section 1146 Exemption .................................................................................39
    G.      Further Assurances..........................................................................................39
    H.      Severability ....................................................................................................39
    I.      Service of Documents ....................................................................................40
    J.      Return of Security Deposits ............................................................................40
    K.      Filing of Additional Documents......................................................................40
    L.      Default ............................................................................................................40
    M.      Attorneys' Fees ..............................................................................................40

**THIRD AMENDED PLAN OF REORGANIZATION OF WISHING WELL PROPERTY INVESTMENTS, LLC, SERIES 1**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Wishing Well Property Investments, LLC, Series 1, a Nevada limited liability company, as debtor and debtor in possession ("**Wishing Well**" or the "**Debtor**"), proposes the following plan of reorganization (the "**Plan**") for the resolution of the outstanding claims against, and equity interests in, the Debtor.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined below).  Reference is made to the Debtor's Disclosure Statement, for a discussion of the Debtor's history, business, results of operations, historical financial information, accomplishments during the Chapter 11 Case (as defined below), projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents, which are or will be filed with the Bankruptcy Court, that are referenced in this Plan or the Disclosure Statement.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

A.      *Rules of Interpretation, Computation of Time and Governing Law*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' ''hereof'' and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

*B.      Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees and Allowed Professional Compensation) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Case, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.

2.      "*Administrative Claim*" means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code (excluding claims under section 503(b)(9) of the Bankruptcy Code), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

3.      "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

4.      "*Allowed*" means, with respect to Claims or Equity Interests:  (a) any Claim or Equity Interest,, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Equity Interest that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated and not Disputed, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim or Equity Interest Allowed pursuant to the Plan; *provided*, *however,* that with respect to any Claim or Equity Interest described in clause (a) above, such Claim or Equity Interest shall be considered Allowed only if and to the extent that (x) with respect to any Claim or Equity Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) such an objection is so interposed and the Claim or Equity Interest shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor or the Reorganized Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

5.      "*Allowed Professional Compensation*" means all Accrued Professional Compensation allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

6.      "*Assets*" means all of the Debtor's right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

7.      "*Avoidance Actions*" means any and all claims and causes of action which any of the Debtor, the debtors in possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

8.      "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims (modified, as necessary, based on voting party in accordance with the Disclosure Statement Order) entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Case, and to the extent of the withdrawal of any reference under section 157 of Title 28

of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of Title 28 of the United States Code, the United States District Court for the District of Nevada.

10.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case.

11.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

12.      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

13.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

14.      "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Case, including through the Effective Date.

15.      "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

16.      "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

17.      "*Claims Bar Date*" means, as applicable, (a) June 10, 2015, (b) the Governmental Bar Date or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

18.      "*Claims Objection Bar Date*" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided*, *however*, that in no event shall the Claims Objection Bar Date be greater than 120 days after the Effective Date with respect to any General Unsecured Claim in Class 39.

19.      "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

20.      "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21.      "*Commencement Date*" means February 4, 2015, the date on which the Debtor commenced the Chapter 11 Case.

22.      "*Commission*" means the U.S. Securities and Exchange Commission.

23.      "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article IX hereof having been:  (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

24.      "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

25.      "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26.      "*Confirmation Hearing Notice*" means that certain notice of Confirmation Hearing approved by the Disclosure Statement Order.

27.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28.      "*Consummation*" means the occurrence of the Effective Date.

29.      "*Creditor*" means a Holder of a Claim.

30.      "*Cure Claim*" means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

31.      "*Debtor*" means Wishing Well Property Investments, LLC, Series 1, in its individual capacity as a debtor in this Chapter 11 Case.

32.      "*Debtor in Possession*" means the Debtor, as debtor in possession in this Chapter 11 Case.

33.      "*Disclosure Statement*" means the *Disclosure Statement for Plan of Reorganization of Wishing Well Property Investments, LLC, Series 1 Under Chapter 11 of the Bankruptcy Code*, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

34.      "*Disclosure Statement Motion*" means that certain *Motion for Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents,* filed with the Bankruptcy Court on June 26, 2015, as the Motion may be amended from time to time.

35.      "*Disclosure Statement Order*" means that certain *Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents,* approved by the Bankruptcy Court on September 24, 2015, as the order may be amended from time to time.

36.      "*Disputed Claim*" means, with respect to any Claim or Equity Interests, any Claim or Equity Interests listed on (a) the Claims Register that is not yet Allowed, or (b) Scheduled as Disputed.

37.      "*Distribution Agent*" means the Debtor or any other distribution agent the Debtor may select.

38.      "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

39.      "*Effective Date*" means the day that is the first Business Day occurring at least 14 days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX.B hereof have been: (i) satisfied; or (ii) waived pursuant to Article IX.C hereof.

40.      "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

41.    "*Equity Contribution*" means the contributions to the Debtor's estate to fund the Plan and payments in full to administrative claimants, priority claimants and HOA claims in Classes 1 through 38 of the Plan. The Equity Contribution is currently valued at $80,000.00.

42.    "*Equity Interest*" means any: (a) equity security in the Debtor, including all issued, unissued, authorized, or outstanding shares of stock, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto or (b) partnership, limited liability company, or similar interest in the Debtor.

43.    "*Estate*" means, as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

44.    "*Exchange Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

45.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

46.    "*Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

47.    "*File*" or "*Filed*" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

48.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

49.    "*General Unsecured Claim*" means: (i) a Class 39 General Unsecured; and (ii) any unsecured Claim against any Debtor that is not: (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, or (d) a Secured Claim.

50.    "*Governmental Bar Date*" means August 3, 2015.

51.    "*Holder*" means an Entity holding a Claim or an Equity Interest.

52.    "*Impaired*" means any Claims in an Impaired Class.

53.    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

54.    "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence.

55.    "*New Equity Interests*" means the equity in Reorganized Debtor to be authorized, issued or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the direct or indirect equity of the Reorganized Debtor.

5

56.    "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring no later than approximately 180 days after the Initial Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring no later than 180 days after the immediately preceding Periodic Distribution Date.

57.    "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

58.    "*Petition Date*" means February 4, 2015, the date on which the Debtor commenced the Chapter 11 Case.

59.    "*Plan*" means this *Plan of Reorganization of Wishing Well Property Investments, LLC, Series 1 Under Chapter 11 of the Bankruptcy Code* dated June 24, 2015, as amended, supplemented or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated herein by reference.

60.    "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.

61.    "*Priority Non-Tax Claim*" means any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

62.    "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

63.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

64.    "*Proof of Interest*" means proof of Equity Interest filed against the Debtor in the Chapter 11 Case.

65.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

66.    "*Record Date*" means the close of business on August 3, 2015, the date of the Governmental Bar Date.

67.    "*Reorganized Debtor*" means the Debtor, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

68.    "*Retained Professional*" means any Entity: (a) employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

69.    "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

70.    "*Securities Act*" means the United States Securities Act of 1933, as amended.

71.    "*SLF*" of "SF" means Schwartz Flansburg PLLC.

72.     "*Solicitation Deadline*" means the close of business on October 16, 2015.

73.     "*Solicitation Package*" means the Disclosure Statement, the Plan, all exhibits thereto, Ballots and the Confirmation Hearing Notice.

74.     "*Tort Claim*" means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to protection of human health, safety or the environment.

75.     "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

76.     "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

77.     "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

78.     "*Voting Classes*" means, Classes 1 through 39, excluding Classes 3, 6, 9, 10, 14, 32, 35, 36(b) and 37.

79.     "*Voting Deadline*" means November 13, 2015 at 5:00 p.m. prevailing Pacific Time for all Holders of Claims, which is the date and time by which all Ballots must be received by the Debtor in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

A.     *Administrative Claims*

Each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (a) on or as soon as reasonably practicable after the Effective Date, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (c) upon such other terms as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and such Holder or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in the ordinary course of business during the chapter 11 cases, other than those liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and holders of claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.

1.     <u>Bar Date for Administrative Claims</u>

Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 45 days after the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims, including, without limitation, Holders of Claims for liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims who assert that such claims constitute Administrative Claims, that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or any Reorganized

Debtor or their Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Reorganized Debtor and the requesting party by the later of (a) 120 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

2.    Professional Compensation and Reimbursement Claims

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Reorganized Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; *provided* that the Reorganized Debtor shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed after the Confirmation Date. Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party by 14 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims. Each Holder of an Allowed Fee Claim shall be paid by the Reorganized Debtor in Cash within five (5) Business Days of entry of the order approving such Allowed Fee Claim.

*Priority Wage/Commission Claims*

Priority Wage/Commission claims are unsecured employee wage or sales commissions described by section 507(a)(4) of the Bankruptcy Code, which allows priority treatment, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days of the petition date. Unless the Holder of such section 507(a)(4) claim agrees otherwise, such holders with receive payment of their claim amount entitled to priority on the Effective Date of the Plan. The Debtor does not currently owe any priority wage or commission claims.

*Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Commencement Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such claim shall be paid in full in cash in accordance with the terms of any agreement between the Debtor and such holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. The Debtor does not have any Priority Tax Claims.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    *Summary*

1.    This Plan constitutes the chapter 11 plan of reorganization for the Debtor. Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtor are placed in Classes for the Debtor. Class 40 consists of Equity Interests. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II.

      2.      The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

      3.      <u>Summary of Classification and Treatment of Classified Claims and Equity Interests</u>

| Class | Claim | Status | Voting Rights |
|:---:|:---|:---:|:---:|
|  |  |  |  |
| 1 | Secured Claim of U.S. Bank | Impaired | Entitled to Vote |
| 2(a) | Secured Claim of Summerlin North Community Association | Impaired | Entitled to Vote |
| 2(b) | Secured Claim of Ocwen Loan Servicing | Impaired | Entitled to Vote |
| 3 | Secured Claim of Deutsche Bank | Unimpaired | Not Entitled to Vote |
| 4 | Secured Claim of Nationstar Mortgage | Impaired | Entitled to Vote |
| 5(a) | Secured Claim of Southern Highlands Community Association | Impaired | Entitled to Vote |
| 5(b) | Secured Claim of Suntrust Mortgage | Impaired | Entitled to Vote |
| 6 | Secured Claim of Nationstar Mortgage | Unimpaired | Not Entitled to Vote |
| 7 | Secured Claim of Bank of New York Mellon | Impaired | Entitled to Vote |
| 8 | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 9 | Secured Claim of Wells Fargo Bank | Unimpaired | Not Entitled to Vote |
| 10 | Secured Claim of Nationstar Mortgage | Unimpaired | Not Entitled to Vote |
| 11 | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 12 | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 13 | Secured Claim of Bayview Loan Servicing | Impaired | Entitled to Vote |
| 14 | Secured Claim of Nationstar Mortgage | Unimpaired | Not Entitled to Vote |
| 15 | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 16 | Secured Claim of Bank of New York Mellon | Impaired | Entitled to Vote |
| 17(a) | Secured Claim of Villa Del Oro Owners Association | Impaired | Entitled to Vote |
| 17(b) | Secured Claim of Bank of New York Mellon | Impaired | Entitled to Vote |
| 18 | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 19(a) | Secured Claim of Century Meadows Homeowners Association | Impaired | Entitled to Vote |
| 19(b) | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 20(a) | Secured Claim of Silverado Court Landscape Maintenance Corp | Impaired | Entitled to Vote |
| 20(b) | Secured Claim of Bayview Servicing | Impaired | Entitled to Vote |
| 21 | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 22 | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 23(a) | Secured Claim of Mountain's Edge Master Association | Impaired | Entitled to Vote |
| 23(b) | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 24(a) | Secured Claim of Lynbrook Master Association | Impaired | Entitled to Vote |
| 24(b) | Secured Claim of Ditech Financial | Impaired | Entitled to Vote |
| 25 | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 26 | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 27 | Secured Claim of Ocwen Loan Servicing | Impaired | Entitled to Vote |
| 28 | Secured Claim of Bank of New York Mellon | Impaired | Entitled to Vote |
| 29(a) | Secured Claim of Villas at Huntington HOA | Impaired | Entitled to Vote |
| 29(b) | Secured Claim of Bank of New York Mellon | Impaired | Entitled to Vote |
| 30 | Secured Claim of Nationstar Mortgage | Impaired | Entitled to Vote |
| 31 | Secured Claim of Nationstar Mortgage | Impaired | Entitled to Vote |
| 32 | Secured Claim of Bayview Servicing | Unimpaired | Not Entitled to Vote |
| 33 | Secured Claim of The Yandell Living Trust | Impaired | Entitled to Vote |

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 34 | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 35 | Secured Claim of Nationstar Mortgage | Unimpaired | Not Entitled to Vote |
| 36(a) | Secured Claim of Iron Mountain Landscape Maintenance Assn | Impaired | Entitled to Vote |
| 36(b) | Secured Claim of Wells Fargo | Unimpaired | Not Entitled to Vote |
| 37 | Secured Claim of Nationstar Mortgage | Unimpaired | Not Entitled to Vote |
| 38 | Secured Claim of Bank of America | Impaired | Entitled to Vote |
| 39 | General Unsecured Claims | Impaired | Entitled to Vote |
| 40 | Equity Interests | Unimpaired | Deemed to Accept |

B.      *Classification and Treatment of Claims and Equity Interests*

    1.    <u>Class 1 – Secured Claim of U.S. Bank, N.A.</u>

        (a)    *Classification:* Class 1 consists of the Secured Claim of U.S. Bank, N.A. against the Debtor's real property located at 8820 Adobe Grande Street, Las Vegas, Nevada 89131.

        (b)    *Treatment:* The holder of the Allowed Class 1 Secured Claim shall be impaired and paid in the amount of $239,000.00, with interest at 4.0% per annum and amortized over a period of 30 years. The Class 1 holder will receive monthly principal and interest payments in the amount of $1,141.02. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

        (c)    *Voting:* Class 1 is an impaired Class, and the holder of the Class 1 Claim is entitled to vote to accept or reject the Plan.

    2.    <u>Class 2(a) – Secured Claim of Summerlin North Community Association</u>

        (a)    *Classification:* Class 2(a) consists of the Secured Claim of Summerlin North Community Association against the Debtor's real property located at 9428 Amber Valley Lane, Las Vegas, Nevada 89134.

        (b)    *Treatment:* The holder of the Allowed Class 2(a) Secured Claim shall be impaired and paid the amount equal to nine (9) months of assessments, or $423.00, on the Effective Date of the Plan.

        (c)    *Voting:* Class 2(a) is an impaired Class, and the holders of the Class 2(a) Claim is entitled to vote to accept or reject the Plan.

    <u>Class 2(b) – Secured Claim of Ocwen Loan Servicing</u>

        (a)    *Classification:* Class 2(b) consists of the Secured Claim of Ocwen Loan Servicing against the Debtor's real property located at 9428 Amber Valley Lane, Las Vegas, Nevada 89134.

        (b)    *Treatment:* The holder of the Allowed Class 2(b) Secured Claim shall be impaired and paid as set forth in the stipulation between the parties, Docket No. 232, in the amount of $238,500.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 2(b) holder will receive monthly principal and interest payments in the amount of $1,317.01. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)     *Voting:* Class 2(b) is an impaired Class, and the holder of the Class 2(b) Claim is entitled to vote to accept or reject the Plan.

3.     Class 3 – Secured Claim of Deutsche Bank

(a)     *Classification:* Class 3 consists of the Secured Claim of Deutsche Bank against the Debtor's real property located at 3509 Benson Lane, Las Vegas, Nevada 89032.

(b)     *Treatment:* The holder of the Allowed Class 3 Secured Claim shall be unimpaired and paid the entire amount of its allowed claim in the amount of $313,880.40 in payments of $871.89 per month over 30 years, based on a property value of $125,000, and an interest rate of 5.25%, and in accordance with Deutsche Bank's election under section 1111(b) of the Bankruptcy Code, and as set forth in the stipulation between the parties, Docket No. 283. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 3 is an unimpaired Class, and the holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan.

4.     Class 4 – Secured Claim of Nationstar Mortgage

(a)     *Classification:* Class 4 consists of the Secured Claim of Nationstar Mortgage against the Debtor's real property located at 721 Biltmore Avenue, Las Vegas, Nevada 89101.

(b)     *Treatment:* The Allowed Class 4 Secured Claim shall be impaired and paid its indubitable equivalent in accordance with section 1129(b)(2)(A)(iii) by the Debtor's surrendering of the property to Nationstar Mortgage in accordance with the stipulation between the parties, Docket No. 234. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in thestipulation between the parties.

(c)     *Voting:* Class 4 is an impaired Class, and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

5.     Class 5(a) – Secured Claim of Southern Highlands Community Association

(a)     *Classification:* Class 5(a) consists of the Secured Claim of Southern Highlands Community Association against the Debtor's real property located at 3067 Cantabria Court, Las Vegas, Nevada 89141.

(b)     *Treatment:* The holder of the Allowed Class 5(a) Secured Claim shall be impaired and paid the amount equal to nine (9) months of assessments, or $540.00, on the Effective Date of the Plan.

(c)     *Voting:* Class 5(a) is an impaired Class, and the holders of the Class 5(a) Claim is entitled to vote to accept or reject the Plan.

Class 5(b) – Secured Claim of Suntrust Mortgage

(a)     *Classification:* Class 5(b) consists of the Secured Claim of Suntrust Mortgage against the Debtor's real property located at 3067 Cantabria Court, Las Vegas, Nevada 89141.

(b)     *Treatment:* The holder of the Allowed Class 5(b) Secured Claim shall be impaired and paid its indubitable equivalent in accordance with section 1129(b)(2)(A)(iii) by the

Debtor's surrendering of the property to Suntrust Mortgage. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)    *Voting:* Class 5(b) is an impaired Class, and the holder of the Class 5(b) Claim is entitled to vote to accept or reject the Plan.

6.    Class 6 – Secured Claim of Nationstar Mortgage

(a)    *Classification:* Class 6 consists of the Secured Claim of Nationstar Mortgage against the Debtor's real property located at 2103 Capestone Street, Las Vegas, Nevada 89134.

(b)    *Treatment:* The holder of the Allowed Class 6 Secured Claim shall be unimpaired and paid the entire amount of its claim as set forth in the stipulation between the parties, Docket No. 268, in the amount of $302,448.59 in payments of $1,424.69 per month over 30 years, based on a property value of $258,000.00 and an interest rate of 5.25% in accordance with Nationstar's election under section 1111(b) of the Bankruptcy Code. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in thestipulation between the parties.

(c)    *Voting:* Class 6 is an unimpaired Class, and the holder of the Class 6 Claim is not entitled to vote to accept or reject the Plan.

7.    Class 7 – Secured Claim of Bank of New York Mellon

(a)    *Classification:* Class 7 consists of the Secured Claim of Bank of New York Mellon against the Debtor's real property located at 6413 Capricorn Drive, Las Vegas, Nevada 89108.

(b)    *Treatment:* The holder of the Allowed Class 7 Secured Claim shall be impaired and paid in the amount of $89,000.00, with interest at 4.0% per annum and amortized over a period of 30 years. The Class 7 holder will receive monthly principal and interest payments in the amount of $424.90. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)    *Voting:* Class 7 is an impaired Class, and the holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

8.    Class 8 – Secured Claim of Ditech Financial, LLC

(a)    *Classification:* Class 8 consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $180,500.00 against the Debtor's real property located at 7475 Desert Lupine Street, Las Vegas, Nevada 89139.

(b)    *Treatment:* The holder of the Allowed Class 8 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 255, in the allowed amount of $180,500.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 8 holder will receive monthly principal and interest payments in the estimated amount of $996.73. In the event of a default by the Debtor post-confirmation, the holder of the Allowed Class 8 Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties. The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and

12

the stipulation relating to the Allowed Class 8 Secured Claim, the terms of the stipulation shall control.

(c)  *Voting:* Class 8 is an impaired Class, and the holder of the Class 8 Claim is entitled to vote to accept or reject the Plan.

9.  Class 9 – Secured Claim of Wells Fargo Bank, N.A.

(a)  *Classification:* Class 9 consists of the Secured Claim of Wells Fargo Bank, N.A. against the Debtor's real property located at 9120 Entrancing Avenue, Las Vegas, Nevada 89149.

(b)  *Treatment:*  The holder of the Allowed Class 9 Secured Claim shall be unimpaired and paid the entire amount of its allowed claim in the amount of $313,963.20 in payments of $872.12 per month over 30 years, based on a property value of $139,000.00 and an interest rate of 5.25% in accordance with Wells Fargo's election under section 1111(b) of the Bankruptcy Code and as set forth in the stipulation between the parties, Docket No. 284.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)  *Voting:* Class 9 is an unimpaired Class, and the holder of the Class 9 Claim is not entitled to vote to accept or reject the Plan.

10.  Class 10 – Secured Claim of Nationstar Mortgage

(a)  *Classification:* Class 10 consists of the Secured Claim of Nationstar Mortgage against the Debtor's real property located at 7973 Firethorn Lane, Las Vegas, Nevada 89123.

(b)  *Treatment:*  The holder of the Allowed Class 10 Secured Claim shall be unimpaired and paid the entire amount of its claim as set forth in the stipulation between the parties, Docket No. 233, in the amount of $230,000.00 in payments of $828.31 per month over 30 years, based on a property value of $150,000 and an interest rate of 5.25% in accordance with Nationstar's election under section 1111(b) of the Bankruptcy Code. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in thestipulation between the parties.

(c)  *Voting:* Class 10 is an unimpaired Class, and the holder of the Class 10 Claim is not entitled to vote to accept or reject the Plan.

11.  Class 11 – Secured Claim of Ditech Financial, LLC

(a)  *Classification:* Class 11 consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $170,000.00 against the Debtor's real property located at 6740 Fort Benton Road, Las Vegas, Nevada 89122.

(b)  *Treatment:*  The holder of the Allowed Class 11 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 259, in the allowed amount of $170,000.00, with interest at 5.25% per annum and amortized over a period of 30 years.  The Class 11 holder will receive monthly principal and interest payments in the estimated amount of $938.75.  In the event of a default by the Debtor post-confirmation, the holder of the Allowed Class 11 Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties. The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and the stipulation relating to the Allowed Class 11 Secured Claim, the terms of the stipulation shall control.

(c)    *Voting:* Class 11 is an impaired Class, and the holder of the Class 11 Claim is entitled to vote to accept or reject the Plan.

12.    Class 12 – Secured Claim of Bank of America

(a)    *Classification:* Class 12 consists of the Secured Claim of Bank of America against the Debtor's real property located at 7703 Gatsby House Street, Las Vegas, Nevada 89166.

(b)    *Treatment:* The holder of the Allowed Class 12 Secured Claim shall be impaired and paid in accordance with the stipulation of the parties, Docket No. 236, in the amount of $202,000.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 12 holder will receive monthly principal and interest payments in the amount of $1,115.45. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in thestipulation between the parties.

(c)    *Voting:* Class 12 is an impaired Class, and the holder of the Class 12 Claim is entitled to vote to accept or reject the Plan.

13.    Class 13 – Secured Claim of Bayview Loan Servicing

(a)    *Classification:* Class 12 consists of the Secured Claim of Bayview Loan Servicing against the Debtor's real property located at 6645 Hathersage Avenue, Las Vegas, Nevada 89139.

(b)    *Treatment:* The holder of the Allowed Class 13 Secured Claim shall be impaired and paid in the amount of $145,000.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 13 holder will receive monthly principal and interest payments in the amount of $692.25. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)    *Voting:* Class 13 is an impaired Class, and the holder of the Class 13 Claim is entitled to vote to accept or reject the Plan.

14.    Class 14 – Secured Claim of Nationstar Mortgage

(a)    *Classification:* Class 14 consists of the Secured Claim of Nationstar Mortgage against the Debtor's real property located at 6418 Hayden Peak Lane, Las Vegas, Nevada 89139.

(b)    *Treatment:* The holder of the Allowed Class 14 Secured Claim shall be unimpaired and paid the entire amount of its claim in accordance with the stipulation between the parties, Docket No. 267, in the amount of $192,000.00 in payments of $668.38 per month over 30 years, based on a property value of $140,000.00, and an interest rate of 4.0% in accordance with Nationstar's election under section 1111(b) of the Bankruptcy Code. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)    *Voting:* Class 14 is an unimpaired Class, and the holder of the Class 14 Claim is not entitled to vote to accept or reject the Plan.

15.    Class 15 – Secured Claim of Bank of America

(a)    *Classification:* Class 15 consists of the Secured Claim of Bank of America against the Debtor's real property located at 5120 Jewel Canyon Drive, Las Vegas, Nevada 89122.

14

(b)     *Treatment:*  The holder of the Allowed Class 15 Secured Claim shall be impaired and paid in the amount of $94,162.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 15 holder will receive monthly principal and interest payments in the amount of $449.54.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 15 is an impaired Class, and the holder of the Class 15 Claim is entitled to vote to accept or reject the Plan.

16.     Class 16 – Secured Claim of Bank of New York Mellon

(a)     *Classification:* Class 16 consists of the Secured Claim of Bank of New York Mellon against the Debtor's real property located at 1110 Jewel Springs Lane, North Las Vegas, Nevada 89081.

(b)     *Treatment:*  The holder of the Allowed Class 16 Secured Claim shall be impaired and paid in the amount of $213,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 16 holder will receive monthly principal and interest payments in the amount of $1,016.89.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 16 is an impaired Class, and the holder of the Class 16 Claim is entitled to vote to accept or reject the Plan.

17.     Class 17(a) – Secured Claim of Villa Del Oro Owners Association

(a)     *Classification:* Class 17(a) consists of the Secured Claim of Villa Del Oro Owners Association against the Debtor's real property located at 3154 Juanita Drive, Las Vegas, Nevada 89102.

(b)     *Treatment:* The holder of the Allowed Class 17(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $1,620.00, on the Effective Date of the Plan.

(c)     *Voting:* Class 17(a) is an impaired Class, and the holders of the Class 17(a) Claim is entitled to vote to accept or reject the Plan.

Class 17(b) – Secured Claim of Bank of New York Mellon

(a)     *Classification:* Class 17(b) consists of the Secured Claim of Bank of New York Mellon against the Debtor's real property located at 3154 Juanita Drive, Las Vegas, Nevada 89102.

(b)     *Treatment:* The holder of the Allowed Class 17(b) Secured Claim shall be impaired and paid in the amount of $59,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 17(b) holder will receive monthly principal and interest payments in the amount of $281.68.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 17(b) is an impaired Class, and the holder of the Class 17(b) Claim is entitled to vote to accept or reject the Plan.

18.    Class 18 – Secured Claim of Ditech Financial, LLC

    (a)    *Classification:* Class 18 consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $90,500.00 against the Debtor's real property located at 6187 Meadow View Lane, Las Vegas, Nevada 89103.

    (b)    *Treatment:* The holder of the Allowed Class 18 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 264, in the allowed amount of $90,500.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 18 holder will receive monthly principal and interest payments in the estimated amount of $499.74. In the event of a default by the Debtor post-confirmation, the holder of the Allowed Class 18 Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties. The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and the stipulation relating to the Allowed Class 18 Secured Claim, the terms of the stipulation shall control.

    (c)    *Voting:* Class 18 is an impaired Class, and the holder of the Class 18 Claim is entitled to vote to accept or reject the Plan.

19.    Class 19(a) – Secured Claim of Century Meadows Homeowners Association

    (a)    *Classification:* Class 19(a) consists of the Secured Claim of Century Meadows Homeowners Association against the Debtor's real property located at 6138 Meadow View Lane, Las Vegas, Nevada 89103.

    (b)    *Treatment:* The holder of the Allowed Class 19(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $1,701.00, on the Effective Date of the Plan.

    (c)    *Voting:* Class 19(a) is an impaired Class, and the holders of the Class 19(a) Claim is entitled to vote to accept or reject the Plan.

Class 19(b) – Secured Claim of Ditech Financial, LLC

    (a)    *Classification:* Class 19(b) consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $90,500.00 against the Debtor's real property located at 6138 Meadow View Lane, Las Vegas, Nevada 89103.

    (b)    *Treatment:* The holder of the Allowed Class 19(b) Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 257, in the allowed amount of $90,500.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 19(b) holder will receive monthly principal and interest payments in the estimated amount of $499.74. In the event of a default by the Debtor post-confirmation, the holder of the Allowed Class 19(b) Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties. The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and the stipulation relating to the Allowed Class 19(b) Secured Claim, the terms of the stipulation shall control.

    (c)    *Voting:* Class 19(b) is an impaired Class, and the holder of the Class 19(b) Claim is entitled to vote to accept or reject the Plan.

20.    <u>Class 20(a) – Secured Claim of Silverado Court Landscape Maintenance Corporation</u>

    (a)    *Classification:* Class 20(a) consists of the Secured Claim of Silverado Court Landscape Maintenance Corporation against the Debtor's real property located at 10672 Medicine Bow Street, Las Vegas, Nevada 89183.

    (b)    *Treatment:* The holder of the Allowed Class 20(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $157.50, on the Effective Date of the Plan.

    (c)    *Voting:* Class 20(a) is an impaired Class, and the holders of the Class 20(a) Claim is entitled to vote to accept or reject the Plan.

<u>Class 20(b) – Secured Claim of Bayview Servicing</u>

    (a)    *Classification:* Class 20(b) consists of the Secured Claim of Bayview Servicing against the Debtor's real property located at 10672 Medicine Bow Street, Las Vegas, Nevada 89183.

    (b)    *Treatment:* The holder of the Allowed Class 20(b) Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 266, in the amount of $255,000.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 20(b) holder will receive monthly principal and interest payments in the amount of $1,408.12. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

    (c)    *Voting:* Class 20(b) is an impaired Class, and the holder of the Class 20(b) Claim is entitled to vote to accept or reject the Plan.

21.    <u>Class 21 – Secured Claim of Ditech Financial, LLC</u>

    (a)    *Classification:* Class 21 consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $216,000.00 against the Debtor's real property located at 7722 Montefrio Avenue, Las Vegas, Nevada 89113.

    (b)    *Treatment:* The holder of the Allowed Class 21 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 263, in the allowed amount of $216,000.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 21 holder will receive monthly principal and interest payments in the estimated amount of $1,192.76. In the event of a default by the Debtor post-confirmation, the holder of the Allowed Class 21 Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties. The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and the stipulation relating to the Allowed Class 21 Secured Claim, the terms of the stipulation shall control.

    (c)    *Voting:* Class 21 is an impaired Class, and the holder of the Class 21 Claim is entitled to vote to accept or reject the Plan.

22.    <u>Class 22 – Secured Claim of Ditech Financial, LLC</u>

    (a)    *Classification:* Class 22 consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $175,000.00 against the Debtor's real property located at 58 Moonrise Way, Henderson, Nevada 89074.

17

(b)     *Treatment:*  The holder of the Allowed Class 22 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 258, in the allowed amount of $175,000.00, with interest at 5.25% per annum and amortized over a period of 30 years.  The Class 22 holder will receive monthly principal and interest payments in the estimated amount of $966.36.  In the event of a default by the Debtor post-confirmation, the Holder of the Allowed Class 22 Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties. The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and the stipulation relating to the Allowed Class 22 Secured Claim, the terms of the stipulation shall control.

(c)     *Voting:* Class 22 is an impaired Class, and the holder of the Class 22 Claim is entitled to vote to accept or reject the Plan.

23.     <u>Class 23(a) – Secured Claim of Mountain's Edge Master Association</u>

(a)     *Classification:* Class 23(a) consists of the Secured Claim of Mountain's Edge Master Association against the Debtor's real property located at 6982 Positano Hill Avenue, Las Vegas, Nevada 89178.

(b)     *Treatment:*  The holder of the Allowed Class 23(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $225.00, on the Effective Date of the Plan.

(c)     *Voting:* Class 23(a) is an impaired Class, and the holders of the Class 23(a) Claim is entitled to vote to accept or reject the Plan.

<u>Class 23(b) – Secured Claim of Caliber Home Loans</u>

(a)     *Classification:* Class 23(b) consists of the Secured Claim of Caliber Home Loans against the Debtor's real property located at 6982 Positano Hill Avenue, Las Vegas, Nevada 89178.

(b)     *Treatment:*  The holder of the Allowed Class 23(b) Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 248, in the amount of $242,072.22, with interest at 5.25% per annum and amortized over a period of 30 years.  The Class 23(b) holder will receive monthly principal and interest payments in the amount of $1,336.73.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)     *Voting:* Class 23(b) is an impaired Class, and the holder of the Class 23(b) Claim is entitled to vote to accept or reject the Plan.

24.     <u>Class 24(a) – Secured Claim of Lynbrook Master Association</u>

(a)     *Classification:* Class 24(a) consists of the Secured Claim of Lynbrook Master Association against the Debtor's real property located at 4836 Pounding Surf Avenue, Las Vegas, Nevada 89131.

(b)     *Treatment:*  The holder of the Allowed Class 24(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $675.00, on the Effective Date of the Plan.

18

(c)     *Voting:* Class 24(a) is an impaired Class, and the holders of the Class 24(a) Claim is entitled to vote to accept or reject the Plan.

Class 24(b) – Secured Claim of Ditech Financial, LLC

(a)     *Classification:* Class 24(b) consists of the Allowed Secured Claim of Ditech Financial, LLC in the amount of $256,000.00 against the Debtor's real property located at 4836 Pounding Surf Avenue, Las Vegas, Nevada 89131.

(b)     *Treatment:*  The holder of the Allowed Class 24(b) Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 254, in the allowed amount of $256,000.00, with interest at 5.25% per annum and amortized over a period of 30 years.  The Class 24(b) holder will receive monthly principal and interest payments in the estimated amount of $1,413.64.  In the event of a default by the Debtor post-confirmation, the holder of the Allowed Class 24(b) Secured Claim shall have the rights and remedies as set forth in the aforementioned stipulation between the parties.  The stipulation is incorporated herein and to the extent there are any inconsistencies between the Plan and the stipulation relating to the Allowed Class 24(b) Secured Claim, the terms of the stipulation shall control.

(c)     *Voting:* Class 24(b) is an impaired Class, and the holder of the Class 24(b) Claim is entitled to vote to accept or reject the Plan.

25.     Class 25 – Secured Claim of Bank of America

(a)     *Classification:* Class 25 consists of the Secured Claim of Bank of America against the Debtor's real property located at 9076 Sage Thicket Avenue, Las Vegas, Nevada 89178.

(b)     *Treatment:*  The holder of the Allowed Class 25 Secured Claim shall be impaired and paid in the amount of $265,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 25 holder will receive monthly principal and interest payments in the amount of $1,265.15.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 25 is an impaired Class, and the holder of the Class 25 Claim is entitled to vote to accept or reject the Plan.

26.     Class 26 – Secured Claim of Bank of America

(a)     *Classification:* Class 26 consists of the Secured Claim of Bank of America against the Debtor's real property located at 9064 Salvatore Street, Las Vegas, Nevada 89148.

(b)     *Treatment:*  The holder of the Allowed Class 26 Secured Claim shall be impaired and paid in the amount of $170,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 26 holder will receive monthly principal and interest payments in the amount of $811.61.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 26 is an impaired Class, and the holder of the Class 26 Claim is entitled to vote to accept or reject the Plan.

27.     Class 27 – Secured Claim of Ocwen Loan Servicing

    (a)     *Classification:* Class 27 consists of the Secured Claim of Ocwen Loan Servicing against the Debtor's real property located at 10155 Sequoia Canyon Place, Las Vegas, Nevada 89148.

    (b)     *Treatment:*  The holder of the Allowed Class 27 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 231, in the amount of $237,500.00, with interest at 5.25% per annum and amortized over a period of 30 years.  The Class 27 holder will receive monthly principal and interest payments in the amount of $1,311.48.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

    (c)     *Voting:* Class 27 is an impaired Class, and the holder of the Class 27 Claim is entitled to vote to accept or reject the Plan.

28.     Class 28 – Secured Claim of Bank of New York Mellon

    (a)     *Classification:* Class 28 consists of the Secured Claim of Bank of New York Mellon against the Debtor's real property located at 2759 Serenidad Drive, Las Vegas, Nevada 89123.

    (b)     *Treatment:*  The holder of the Allowed Class 28 Secured Claim shall be impaired and paid in the amount of $130,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 28 holder will receive monthly principal and interest payments in the amount of $620.64.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

    (c)     *Voting:* Class 28 is an impaired Class, and the holder of the Class 28 Claim is entitled to vote to accept or reject the Plan.

29.     Class 29(a) – Secured Claim of Villas at Huntington HOA

    (a)     *Classification:* Class 29(a) consists of the Secured Claim of Villas at Huntington HOA against the Debtor's real property located at 699 Shadwell Street, Las Vegas, Nevada 89178.

    (b)     *Treatment:*  The holder of the Allowed Class 29(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $379.80.00, on the Effective Date of the Plan.

    (c)     *Voting:* Class 29(a) is an impaired Class, and the holders of the Class 29(a) Claim is entitled to vote to accept or reject the Plan.

Class 29(b) – Secured Claim of Bank of New York Mellon

    (a)     *Classification:* Class 29(b) consists of the Secured Claim of Bank of New York Mellon against the Debtor's real property located at 699 Shadwell Street, Las Vegas, Nevada 89178.

    (b)     *Treatment:*  The holder of the Allowed Class 29(b) Secured Claim shall be impaired and paid in the amount of $169,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 29(b) holder will receive monthly principal and interest

payments in the amount of $806.83. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 29(b) is an impaired Class, and the holder of the Class 29(b) Claim is entitled to vote to accept or reject the Plan.

30.     Class 30 – Secured Claim of Nationstar Mortgage, LLC

(a)     *Classification:* Class 30 consists of the Secured Claim of Nationstar Mortgage, LLC against the Debtor's real property located at 8531 Shelly Road, Las Vegas, Nevada 89123.

(b)     *Treatment:* The holder of the Allowed Class 30 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 235, in the amount of $205,000.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 30 holder will receive monthly principal and interest payments in the amount of $1,132.02. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)     *Voting:* Class 30 is an impaired Class, and the holder of the Class 30 Claim is entitled to vote to accept or reject the Plan.

31.     Class 31 – Secured Claim of Nationstar Mortgage, LLC

(a)     *Classification:* Class 31 consists of the Secured Claim of Nationstar Mortgage, LLC against the Debtor's real property located at 7593 Slipstream Street, Las Vegas, Nevada 89139.

(b)     *Treatment:* The holder of the Allowed Class 31 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 253, in the amount of $185,000.00, with interest at 5.25% per annum and amortized over a period of 30 years. The Class 31 holder will receive monthly principal and interest payments in the amount of $1,021.58. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)     *Voting:* Class 31 is an impaired Class, and the holder of the Class 31 Claim is entitled to vote to accept or reject the Plan.

32.     Class 32 – Secured Claim of Roundpoint Mortgage Servicing

(a)     *Classification:* Class 32 consists of the Secured Claim of Roundpoint Mortgage Servicing against the Debtor's real property located at 850 Sloan, F104, Las Vegas, Nevada 89110.

(b)     *Treatment:* The holder of the Allowed Class 32 Secured Claim shall be unimpaired and paid the indubitable equivalent of its claim in accordance with section 1129(b)(2)(A)(iii) by the Debtor's surrendering of the property to Roundpoint Mortgage Servicing in accordance with the stipulation between the parties, Docket No. 245. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)     *Voting:* Class 32 is an impaired Class, and the holder of the Class 32 Claim is entitled to vote to accept or reject the Plan.

21

33.     Class 33 – Secured Claim of The Yandell Living Trust

    (a)     *Classification:* Class 33 consists of the Secured Claim of The Yandell Living Trust against the Debtor's real property located at 7556 Spanish Bay Drive, Las Vegas, Nevada 89113.

    (b)     *Treatment:*  The holder of the Allowed Class 33 Secured Claim shall be impaired and paid in the amount of $540,000.00, with interest at 4.0% per annum and amortized over a period of 30 years.  The Class 33 holder will receive monthly principal and interest payments in the amount of $2,578.04.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

    (c)     *Voting:* Class 33 is an impaired Class, and the holder of the Class 33 Claim is entitled to vote to accept or reject the Plan.

34.     Class 34 – Secured Claim of Bank of America

    (a)     *Classification:* Class 34 consists of the Secured Claim of Bank of America against the Debtor's real property located at 144 Spinnaker Drive, Henderson, Nevada 89015.

    (b)     *Treatment:*  The holder of the Allowed Class 34 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 249, in the amount of $122,512.66, with interest at 5.25% per annum and amortized over a period of 30 years.  The Class 34 holder will receive monthly principal and interest payments in the amount of $676.52. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

    (c)     *Voting:* Class 34 is an impaired Class, and the holder of the Class 34 Claim is entitled to vote to accept or reject the Plan.

35.     Class 35 – Secured Claim of Nationstar Mortgage

    (a)     *Classification:* Class 35 consists of the Secured Claim of Nationstar Mortgage against the Debtor's real property located at 421 Violetta Avenue, North Las Vegas, Nevada 89031.

    (b)     *Treatment:*  The holder of the Allowed Class 35 Secured Claim shall be unimpaired and paid the entire amount of its claim in accordance with the stipulation between the parties, Docket No. 233, in the amount of $208,000.00 in payments of $577.78 per month over 30 years, based on a property value of $153,000.00, and an interest rate of 5.0% in accordance with Nationstar's election under section 1111(b) of the Bankruptcy Code.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

    (c)     *Voting:* Class 35 is an unimpaired Class, and the holder of the Class 35 Claim is not entitled to vote to accept or reject the Plan.

36.     Class 36(a) – Secured Claim of Iron Mountain Ranch Landscape Maintenance Association

    (a)     *Classification:* Class 36(a) consists of the Secured Claim of Iron Mountain Ranch Landscape Maintenance Association against the Debtor's real property located at 4904 Whistling Acres Avenue, Las Vegas, Nevada 89131.

(b)     *Treatment:*  The holder of the Allowed Class 35(a) Secured Claim shall be impaired and paid an amount equal to nine (9) months of assessments, or $351.00, on the Effective Date of the Plan.

(c)     *Voting:* Class 36(a) is an impaired Class, and the holders of the Class 36(a) Claim is entitled to vote to accept or reject the Plan.

Class 36(b) – Secured Claim of Bank of Wells Fargo Bank, N.A.

(a)     *Classification:* Class 36(b) consists of the Secured Claim of Wells Fargo Bank, N.A. against the Debtor's real property located at 4904 Whistling Acres Avenue, Las Vegas, Nevada 89131.

(b)     *Treatment:*  The holder of the Allowed Class 36(b) Secured Claim shall be unimpaired and paid the entire amount of its allowed claim in the amount of $300,945.60 in payments of $988.44 per month over 30 years, based on a property value of $179,000.00 and an interest rate of 5.25% in accordance with Bank of New York Mellon's election under section 1111(b) of the Bankruptcy Code, and in accordance with the stipulation between the parties, Docket No. 286.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second any contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 36(b) is an unimpaired Class, and the holder of the Class 36(b) Claim is not entitled to vote to accept or reject the Plan.

37.     Class 37 – Secured Claim of Nationstar Mortgage

(a)     *Classification:* Class 37 consists of the Secured Claim of Nationstar Mortgage against the Debtor's real property located at 4831 White Jade Street, North Las Vegas, Nevada 89081.

(b)     *Treatment:*  The holder of the Allowed Class 37 Secured Claim shall be unimpaired and paid the entire amount of its claim in accordance with the stipulation between the parties, Docket No. 233, in the amount of $281,707.00 in payments $891.81 per month over 30 years, based on a property value of $161,500.00 and an interest rate of 5.25% in accordance with Nationstar's election under section 1111(b) of the Bankruptcy Code.   In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)     *Voting:* Class 37 is an unimpaired Class, and the holder of the Class 37 Claim is not entitled to vote to accept or reject the Plan.

38.     Class 38 – Secured Claim of Bank of America

(a)     *Classification:* Class 38 consists of the Secured Claim of Bank of America against the Debtor's real property located at 611 Zalataia Way, Las Vegas, Nevada 89031.

(b)     *Treatment:*  The holder of the Allowed Class 38 Secured Claim shall be impaired and paid in accordance with the stipulation between the parties, Docket No. 180, in the amount of $125,000.00, with interest at 5.0% per annum and amortized over a period of 30 years.  The Class 38 holder will receive monthly principal and interest payments in the amount of $671.03. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the stipulation between the parties.

(c)    *Voting:* Class 38 is an impaired Class, and the holder of the Class 38 Claim is entitled to vote to accept or reject the Plan.

39.    <u>Class 39 General Unsecured Claims</u>

(a)    *Allowance of General Unsecured Claims:* All General Unsecured Claims shall be determined and Allowed in accordance with the procedures set forth in Articles VII and VIII below.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Class 39 Claim has been paid by the Debtor prior to the Effective Date, or agrees to alternate treatment, Allowed General Unsecured Claims shall be paid a pro rata distribution from the Equity Contribution, after the payment of allowed administrative claims, priority claims and HOA claims in classes 1 through 38.

(c)    *Voting:* Class 39 is an Impaired Class, and Holders of Class 39 Claims are entitled to vote to accept or reject the Plan.

40.    <u>Class 40 – Equity Interests in the Debtor.</u>

(a)    *Classification*: Class 40 consists of all Equity Interests.

(b)    *Treatment*: All of the Debtor's equity interests will remain unimpaired and the Debtor's equity security holders shall retain their equity interests in the Reorganized Debtor.

(c)    *Voting*: Class 40 is an Unimpaired Class, and Holders of Class 40 Claims are conclusively deemed to reject the Plan.

C.    *Discharge of Claims*

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation. Upon Confirmation, the Debtor and all property dealt with herein shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.    *Presumed Acceptance of Plan*

Class 40 is Unimpaired under the Plan, and therefore, Class 40 is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

B.    *Voting Classes*

Classes 1 through 39 are Impaired Classes under the Plan (excluding Classes 4, 6, 10, 14, 35 and 37) and Classes 1 through 39 (excluding Classes 4, 6, 10, 14, 35 and 37) shall be entitled to vote to accept or reject the Plan.

C.    *Acceptance by Impaired Classes of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.      *Cramdown*

The Debtor requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan in accordance with Article XIII.B hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

E.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**1.      General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, distributions, releases and other benefits provided under the Plan, and as a result of arm's-length negotiations among the Debtor and its creditors, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

**2.      Restructuring Transactions**

Prior to, on or after the Effective Date, and pursuant to the Plan, the Debtor and the Reorganized Debtor shall enter into such restructuring transactions (the "**Restructuring Transactions**") and shall take any actions as may be necessary or appropriate to affect a restructuring of their businesses or the overall organizational structure of the Reorganized Debtor.

As its principal Restructuring Transaction, the Debtor or Reorganized Debtor, as appropriate, shall issue the New Equity Interests to the equity interest holders in exchange for the Equity Contribution.

The Restructuring Transactions may include one or more sales, mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be determined by the secured claim holder to be necessary or appropriate to fully effectuate the transfer of the New Equity Interests.  The actions to effect the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of sale, merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transactions and that satisfy the applicable requirements of applicable state and federal law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions, and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state or federal law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state or federal law in connection with the Restructuring Transactions.  In the event a Restructuring Transaction is a merger transaction, upon the consummation of such Restructuring Transaction, each party to such merger shall cease to exist as a separate corporate entity and thereafter the surviving Reorganized Debtor shall assume and perform the obligations of each Reorganized Debtor under this Plan.  In the event a Reorganized Debtor is liquidated, the

Reorganized Debtor shall assume and perform such obligations.  Implementation of the Restructuring Transactions shall not affect the distributions under the Plan.

To the extent that any such Restructuring Transactions result in the assignment of any Executory Contract or Unexpired Lease assumed under the Plan to a party other than the Debtor which was originally a party to such Executory Contract or Unexpired Lease (including such Debtor as Reorganized Debtor), the Debtors shall follow the procedures in Article VI of the Plan for the assignment of such Executory Contracts and Unexpired Leases under section 365 of the Bankruptcy Code.  The chairman of the board of directors, president, chief executive officer, chief financial officer, any executive vice-president or senior vice-president, member or manager or any other appropriate officer of each Debtor, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan and the Restructuring Transactions.  The secretary or assistant secretary of the appropriate Debtor and of a Reorganized Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date, and pursuant to the Plan, the Debtor and the Reorganized Debtor, as applicable, shall take any actions as may be necessary or appropriate to affect a restructuring of their businesses or the overall organizational structure of the Reorganized Debtor.  As of the date hereof, the actions to effect the Restructuring Transactions may include:

- the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree;
- the filing of appropriate certificates or articles of formation, reformation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and
- all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.

### 3.     New Corporate Existence

The Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company or series limited liability company, as applicable, with all the powers of a corporation or limited liability company pursuant to laws of the State of Nevada and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, in such a manner as to preserve the Debtor's net operating losses for Federal tax purposes, except to the extent such certificate of incorporation or bylaws (or other formation documents) are amended by or in connection with the Plan or otherwise and, to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.

### 4.     Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan, in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estate (including, without limitation, Causes of Action) and any property acquired by the Debtor pursuant to the Plan, shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges or other encumbrances.  Except as may be provided in the Plan and any sale all or a portion of the Debtor's Assets, on and after the Effective Date, the Reorganized Debtor may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor shall pay the charges that they incur after the Effective Date for Retained Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Retained Professional fee applications) without application to the Bankruptcy Court.

### 5.     New Equity Interests

On the Effective Date, the Reorganized Debtor shall issue the New Equity Interests to the Debtor's current equity interest holders pursuant to the terms set forth in the Plan.  The New Equity Interests shall represent all of the Equity Interests in the Reorganized Debtor as of the Effective Date.  The New Equity Interests to be issued to the Debtor's current equity interest holders without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

6.        **Securities Registration Exemption and Registration Rights Agreement**

The New Equity Interests to be issued pursuant to the Plan will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

7.        **Release of Liens, Claims and Equity Interests**

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate shall be fully released and discharged.

8.        **Certificate of Incorporation and Bylaws**

The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies) of the Debtor shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to the Reorganized Debtor. On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall file a new certificate of incorporation or organization with the secretary of state (or equivalent state officer or entity), which, as required by section 1123(a)(6) of the Bankruptcy Code, shall prohibit the issuance of non-voting securities.  After the Effective Date, the Reorganized Debtor may file a new, or amend and restate its existing, certificate of incorporation, charter and other constituent documents as permitted by the relevant state corporate law.

9.        **Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Debtor or the Reorganized Debtor, as applicable, may take all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto.  The secretary and any assistant secretary of the Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or partners of the Debtor, or the need for any approvals, authorizations, actions or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the issuance of New Equity Interests.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.     Assumption of Executory Contracts and Unexpired Leases

Except as otherwise set forth herein, each Executory Contract or Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:

(a)     has been previously rejected by the Debtor by Final Order of the Bankruptcy Court;

(b)     has been rejected by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;

(c)     is the subject of a motion to reject pending as of the Effective Date;

(d)     is listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement; or

(e)     is otherwise rejected pursuant to the terms herein.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  The Debtor reserves the right to amend the schedule of Rejected Executory Contracts and Unexpired Leases at any time before the Effective Date.

2.     Approval of Assumptions

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption of such Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.  Each Executory Contract and Unexpired Lease assumed pursuant to this section or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

3.     Assignment of Executory Contracts or Unexpired Leases

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption and assignment, which will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court,  Additionally, the Debtor shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts.  Any applicable cure amounts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be filed, served and actually received by the Debtor, and its counsel, SLF, at least five

(5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

> 4.    <u>Rejection of Executory Contracts or Unexpired Leases</u>

All Executory Contracts and Unexpired Leases listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement shall be deemed rejected as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

> 5.    <u>Stripping of Liens</u>

The Plan shall constitute a motion pursuant to section 506 of the Bankruptcy Code, and Bankruptcy Rules 3012 and 9014.  Except as expressly provided in Classes 1 through 38, all other secured claims and their related liens against the Debtor's properties shall be stripped, including but not limited to junior mortgages, non-superpriority portions of HOA liens, utility liens and all other liens against the Debtor's properties.  Therefore the order confirming the Plan will constitute the Court's finding and determination that the stripping of liens as set forth herein is: (i) in the best interests of the Debtor, its estate and parties-in-interest, (ii) fair, equitable and reasonable, (iii) made in good faith, and (iv) approved pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rules 3012 and 9014.

**B.**    *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against any Debtor or any Reorganized Debtor or their Estates and property, and the Debtor or the Reorganized Debtor and their Estates and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

**C.**    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  At least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will: (1) list the applicable cure amount, if any; (2) describe the procedures for filing objections thereto; and (3) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtor shall file

with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assumed and the proposed cure amounts.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtor, and its counsel, SLF, at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  If an objection to Cure is sustained by the Bankruptcy Court, the Reorganized Debtor in their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

D.      *Contracts and Leases Entered Into After the Commencement Date*

Contracts and leases entered into after the Commencement Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Reorganized Debtor shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date; *provided*, *however*, that payments on account of General Unsecured Claims that become Allowed Claims on or before the Effective Date may commence on the Effective Date.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the first Periodic Distribution Date after the Disputed Claim becomes an Allowed Claim.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall establish appropriate reserves for potential payment of such Claims.

*C.*      *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General

Except as otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Reorganized Debtor, as applicable; and *provided further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.    Distributions by Distribution Agents

The Debtor and the Reorganized Debtor, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  As a condition to serving as a Distribution Agent, a Distribution Agent must (a) affirm its obligation to facilitate the prompt distribution of any documents, (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required hereunder and (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required hereunder that are to be distributed by such Distribution Agent.

The Distribution Agents, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "Indemnified Parties") shall be indemnified and held harmless by the Debtor and the Reorganized Debtor, to the fullest extent permitted by law for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Distribution Agents solely in their capacity as such; provided, however, that the Debtor and the Reorganized Debtor shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

4.    Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtor shall not be required to make distributions or payments of less than $10.00 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or share of New Equity Interests under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Membership Interests (up or down), with half dollars and half shares of New Equity Interests or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has an economic value less than $1,000.00, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final

distribution to such Holder and is or has an economic value less than $10.00, which shall be treated as an undeliverable distribution under Article VII.C.5 below.

        5.   <u>Undeliverable Distributions</u>

        (a)      Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtor, subject to Article VII.C.5(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

        (b)      Failure to Claim Undeliverable Distributions

No later than 210 days after the Effective Date, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stays open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtor of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or their property. In such cases, (i) any Cash held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

        (c)      Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such checks, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case remains open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

D.     *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the

distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.       *Timing and Calculation of Amounts to Be Distributed*

On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.       *Setoffs*

The Debtor and the Reorganized Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.       *Resolution of Disputed Claims*

1.       Allowance of Claims

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.  All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

2.       Prosecution of Objections to Claims

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all

33

Claims, regardless of whether such Claims are in a Class or otherwise; provided, however, this provision shall not apply to Fee Claims.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

### 3.    Claims Estimation

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 4.    Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### 5.    Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

### B.    *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtor or the Reorganized Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

*C.*     *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

*A.*     *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

*B.*     *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof.

1.     The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtor.

2.     The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor.  The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

3.     All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

*C.*     *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtor without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

*D.*     *Effect of Non Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against any Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

# ARTICLE X.

## SETTLEMENT, RELEASE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated and released pursuant hereto.

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, its estate and all Holders of Claims and Equity Interests, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  The Confirmation Order shall approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

In accordance with the provisions of this Plan, including Article VIII hereof, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Claims against them, (2) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities, and (3) the Reorganized Debtor may, in its sole and absolute discretion, sell its properties.

B.    *Preservation of Rights of Action*

1.    <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Commencement Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case.

2.    <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, claims and Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## ARTICLE XI.

## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.    resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided* that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.  issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.  enforce Article X.A and Article X.B hereof;

12.  enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.  resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

14.  enter an order concluding the Chapter 11 Case; and

15.  awarding attorneys' fees in accordance with Art. XIII, Section M of the Plan.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

B.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.        *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

F.        *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

G.        *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.        *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtor, the Reorganized Debtor or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing.  Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by overnight mail to:

> Wishing Well Property Investments, LLC, Series 1
> Attn: Danielle Roth
> 7566 Spanish Bay Drive
> Las Vegas, Nevada 89113
>
> **with copies to**:
>
> Schwartz Flansburg PLLC
> 6623 Las Vegas Blvd. South
> Suite 300
> Las Vegas, Nevada 89119

J.      *Return of Security Deposits*

Unless the Debtor have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtor to any Person or Entity at any time after the Commencement Date shall be returned to the Reorganized Debtor within twenty (20) days after the Effective Date, without deduction or offset of any kind.

K.      *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

L.      *Default*

Upon the Effective Date of the Plan, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan, the applicable creditor or party-in-interest shall notify the Debtor and Debtor's counsel of the default in writing in accordance with the notice provisions herein, after which the Debtor shall have: (i) thirty (30) calendar days from the date of the written notification to cure the default; or (ii) if the cure requires more than thirty (30) days, so long as the Debtor initiates steps to cure the default within thirty (30) days and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under the contract(s) between the parties and/or applicable state law, without further court order or proceeding being necessary.

M.      *Attorneys' Fees*

In the event any party is required to enforce the terms of the Plan or any other act required or contemplated by the Plan, the prevailing party in any motion or action to enforce shall be entitled recover reasonable attorneys' fees, as well as court costs and expenses, incurred in connection with such motion or legal action.

Dated:  April 6, 2016

Respectfully submitted,

Wishing Well Property Investments, LLC, Series 1
By: /s/ Danielle Roth
       Danielle Roth,
       Its Manager